# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| DAVID JONATHAN TULIS, ) | |
| ) | Case No. 1:24-cv-240 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Michael J. Dumitru |
| FLEXIBILITY CAPITAL, FUNDING ) | |
| METRICS LLC, and TBF FINANCIAL ) | |
| LLC, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## MEMORANDUM AND ORDER

Before the Court are the following motions filed by *pro se* Plaintiff David Jonathan Tulis: (1) an amended motion for return of seized property (Doc. 49); (2) an amended motion for summary judgment (Doc. 50); (3) an amended motion to void execution of judgment (Doc. 51); (4) an amended motion for order of estoppel (Doc. 53); and (5) a motion for sanctions (Doc. 64). Also before the Court are motions to dismiss filed by Defendant Flexibility Capital ("Flexibility Capital") and Defendant Funding Metrics LLC ("Funding Metrics"). (Docs. 54, 55, 60, 68.) For the reasons that follow, the Court will **DENY** Tulis's motions. The Court will also **GRANT** Flexibility Capital's motions to dismiss and **DENY** Funding Metrics's motion to dismiss.

## I. PROCEDURAL HISTORY

Tulis initiated this action on July 18, 2024, alleging state-law usury and fraud claims against Defendants Flexibility Capital, Mary Cheadle, Funding Metrics LLC, TBF Financial LLC, and James B.M. Hooper. (*See* Doc. 1.) Tulis filed an amended complaint on August 12,

2024. (Doc. 13.) Based on Tulis's amended complaint and prior court rulings, the only claims that remain pending are Tulis's claims for violation of Tennessee usury laws and for fraud under Tennessee law against Flexibility Capital and Funding Metrics.

Flexibility Capital and Funding Metrics previously moved to dismiss Tulis's claims against them for insufficient service of process. (Docs. 24, 34, 44.) On February 26, 2025, the Court entered a memorandum and order finding that Tulis had not effectuated proper service on Flexibility Capital and Funding Metrics and ordered Tulis to effectuate proper service and file a proof of service within forty-five days. (Doc. 46, at 9–10.) On March 31, 2025, Tulis filed proofs of service which included affidavits from Christine Cupelli averring that she served Flexibility Capital and Funding Metrics by sending them a copy of the summons and complaint by certified mail. (Doc. 48.) Tulis's proofs of service did not, however, include return receipts confirming that Flexibility Capital and Funding Metrics received the summonses and complaints by certified mail. (*See id.*)

On April 11, 2025, Tulis filed: (1) an amended motion for return of seized property (Doc. 49); (2) an amended motion for summary judgment (Doc. 50); (3) an amended motion to void execution of judgment (Doc. 51); (4) an amended motion for order of estoppel (Doc. 53). Flexibility Capital and Funding Metrics then moved to dismiss Tulis's claims, again asserting that he had not effectuated proper service. (Docs. 54, 55.) Four days later, Tulis filed additional affidavits of service from Christine Cupelli, which included return receipts from her certified mail to Flexibility Capital and Funding Metrics. (Docs. 57, 58.)

On May 2, 2025, Flexibility Capital filed a motion to dismiss, arguing that Tulis's amended complaint failed to state a claim upon which relief can be granted (Doc. 60), and, on May 12, 2025, Funding Metrics filed a motion to adopt the arguments asserted by Flexibility

Capital and to dismiss Tulis's claims against it (Doc. 68). On May 6, 2025, Tulis filed a motion for sanctions. (Doc. 64.) These motions are now ripe for the Court's review.

## II. TULIS'S FACTUAL ALLEGATIONS

According to Tulis's amended complaint, Flexibility Capital is a "merchant cash advance funder and styles itself as an accounts receivable financier." (Doc. 13, at 5.) Funding Metrics is a "leading provider of alternative funding solutions" and offers "revenue-based financing loans" that are based on "purchases of future receivables." (*Id*. at 6.) Although not entirely clear, it appears that this case arises out of two separate agreements that Tulis and his radio station entered into with Flexibility Capital and Funding Metrics. (*Id*. at 13.)

In his amended complaint, Tulis represents that he is seeking "redress of harm in Tennessee court cases," including review of an "appeals court order upholding a judgment against [him]" in *Flexibility Capital Inc. v. Sabatino Cupelli et al.*, (No. E2023-00335-COA-R3-CV, Jan. 5, 2024). (*Id*. at 6–7.) More specifically, Tulis alleges that his radio station borrowed $16,320 from Flexibility Capital on February 6, 2020, and that he was unable to repay the loan because of complications resulting from the COVID-19 pandemic. (*Id*. at 9.) According to Tulis, the balance owed on the loan "was $24,140," which equates to charging an interest rate of 208.05%, in violation of Tennessee's usury laws. (*Id*. at 8.) Specifically, Tulis alleges:

> Flexibility funded radio $16,320 by direct deposit (the so-called 'purchase price' of $17,000 minus an 'origination fee' of $680). The agreement requires radio to pay $164.22 every weekday. The total balance due is $24,140, or $7,820 more than the loan amount received. It was to have taken 147 weekdays to pay off the loan, or 29.4 weeks.

(*Id*. at 13.) When Tulis failed to make the required payments, Flexibility sued him and his business partner, Sabatino Cupelli, in the General Sessions Court for Hamilton County, Tennessee. (*Id*. at 9.) Tulis appealed the general sessions court judgment to the Circuit Court for

Hamilton County, Tennessee, which also entered a judgment against him. (*Id*.) Tulis then appealed his case to the Tennessee Court of Appeals, which summarized the dispute as follows:

> In early 2020, Sabatino Cupelli and David J. Tulis (collectively, "Defendants") were business partners operating Hot News Talk Radio, a radio station. On February 6, 2020, Hot News Talk Radio, LLC ("Radio"), a Delaware LLC of which Defendants were the only members, entered into a Future Receivables Sale and Purchase Agreement (the "Agreement") with Flexibility Capital, Inc. ("Flexibility"), a New York corporation. Under the Agreement, Flexibility purchased 10% of Radio's future receipts of monies paid and delivered to Radio by Radio's customers and/or other vendees, up to $24,140.00 (the "Purchased Amount"). In exchange, Flexibility paid $17,000.00 (the "Purchase Price") to Radio.
> 
> The Agreement provides that Radio shall make daily installment payments of $164.22 toward the Purchased Amount. To facilitate this, the Agreement requires that Radio deposit all future receipts into a single bank account and authorizes Flexibility to initiate daily debits from that account each weekday until the Purchased Amount is paid in full. The Agreement contains a reconciliation process that Radio could initiate to receive a credit back to its bank account in the event that 10% of Radio's receipts for a month was less than the amount actually paid to Flexibility during that month. The Agreement also contains a procedure that Radio could use to request modification of the daily installment amount to more closely align with Radio's actual receipts.
> 
> The Agreement also states that the Purchase Price was paid to Radio in consideration for the ownership of the purchased receipts and "that payment of the Purchase Price by Flexibility is not intended to be, nor shall it be construed as a loan from Flexibility to [Radio] that requires absolute and unconditional repayment on a maturity date." Included among the Events of Default defined by the Agreement was "Four (4) or more ACH transactions attempted by Flexibility in one calendar month are rejected by [Radio]'s bank." The Agreement includes a choice of law and forum selection clause:
> 
>> **Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in New York State, (the "<u>Acceptable Forums</u>"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to

> oppose any motion or application made by either party to transfer
> such proceeding to an Acceptable Forum.

Contemporaneous with the execution of the Agreement, Defendants each signed a Personal Guaranty of Performance (the "Guaranty") whereby they jointly and severally agreed to pay or perform all of Radio's obligations in the event that Radio defaulted or breached its obligations under the Agreement. The Guaranty also contains a choice of law and forum selection clause that substantively mirrors the clause in the Agreement.

The first failed ACH debit from Radio's bank account occurred on March 3, 2020. Additional failed ACH debits occurred on March 9, 11, 12, and 13, 2020. On or about August 2, 2021, Flexibility filed a Civil Summons against Defendants d/b/a Hot News Talk Radio (Nooga Radio) in the Hamilton County General Sessions Court to collect the remaining $21,061.38 of the Purchased Amount plus attorney's fees of $5,265.35. On March 29, 2022, the parties appeared in General Sessions Court and Defendants consented to the entry of default judgment in the amount of $24,999.99 plus post-judgment interest at a rate of 12%. On April 8, 2022, Defendants appealed the General Sessions Court judgment to the Hamilton County Circuit Court.

On May 16, 2022, Flexibility filed a motion for summary judgment and a statement of undisputed material facts pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure. Flexibility averred, *inter alia*, that Defendants executed the Agreement; Flexibility provided Defendants the money set forth in the Agreement; Defendants failed to pay as promised; the Agreement provides for the continuing accrual of interest and for the payment by Defendants of Flexibility's attorney's fees of 25% of the balance due; the Agreement is secured by a UCC-1 lien, which grants Flexibility a first priority lien on all of "Seller's" tangible and intangible assets; and that Defendants detain Flexibility's collateral and have declined to turn over possession of the collateral to Flexibility.

Defendants did not respond to the Rule 56.03 statement of facts. However, Defendants filed a number of documents setting forth various arguments in response to the motion for summary judgment. A hearing on Flexibility's motion occurred on November 7, 2022. The trial court found that the averments in Flexibility's Rule 56.03 statement of facts were undisputed and that Flexibility was entitled to judgment as a matter of law. The trial court announced its ruling from the bench at the conclusion of the hearing and entered a written order memorializing its ruling on December 5, 2022 (the "Summary Judgment Order"). A flurry of motions, hearings, and orders followed.

On November 17, 2022, after the hearing on Flexibility's motion for summary judgment, but before the Summary Judgment Order was entered, Defendants filed a motion to reconsider the trial court's grant of summary judgment (the "Motion to Reconsider"). In the Motion to Reconsider, Defendants did not reference Rules 59 or 60 of the Tennessee Rules of Civil Procedure, and instead

argued for the first time that the Agreement is "an illegal usury contract" and that the trial court should declare it void. Defendants argued, in a "Brief in support of motion to reconsider," that Flexibility made misrepresentations in its Rule 56.03 statement of facts. They also argued that "[i]t has taken this long for accused to realize they are victims of fraud of which this prosecution is a part[,]" and claim they are making their Motion to Reconsider to avoid "fraud on the court." Flexibility argued in response that Defendants waived these arguments by waiting to raise them for the first time after summary judgment was entered. It also argued that the contractual interest rate was not usurious.

A hearing on Defendants' Motion to Reconsider occurred on December 19, 2022. On the morning of the hearing, Defendants filed an "Answer to plaintiff response to motion to reconsider, challenge to subject matter jurisdiction[.]" Defendants argued for the first time that the trial court lacked subject matter jurisdiction "on grounds of (1) unconscionability of the agreement, and, (2) [Flexibility]'s resultant lack of standing[.]" However, their arguments in support of this issue simply repeated the same complaints already raised by Defendants about the structure of the Agreement and their position that the Agreement is usurious. There is no transcript or statement of evidence from the December 19 hearing; however, the record reveals that the trial court denied Defendants' motion in an oral ruling from the bench at the conclusion of the hearing. A written order to that effect was entered January 18, 2023, finding

> that [Flexibility]'s motion for summary judgment was properly granted and the [c]ourt will not disturb its earlier ruling.... Defendants are now attempting to belatedly assert new defenses, including subject matter jurisdiction. The time has run to assert such defenses. The judgment is final. Defendants' motion to reconsider is denied.

On December 22, 2022, after the hearing on the Motion to Reconsider, but before the written order denying it was entered, Defendants filed a "Motion to set aside order for intrinsic fraud, & demand for mandatory judicial notice" in which they sought, once again, to have the trial court set aside its grant of summary judgment (the "Motion to Set Aside"). Defendants repeated the arguments previously set forth in their Motion to Reconsider and "Answer" to Flexibility's response to the Motion to Reconsider. Defendants also complained that the trial court did not rule on the substance of Defendants' newly raised subject matter jurisdiction defense. Defendants requested relief pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure and "demand[ed] a setting aside of the [Summary Judgment Order] if only for purposes of the docket. A set-aside would allow time for a hearing and for the court to reset the 30-day clock for notice of appeal, which toll otherwise hits Jan. 4."

A hearing on Defendants' Motion to Set Aside occurred on February 6, 2023. There is no transcript or statement of evidence from the February 6 hearing; however, the record reveals that the trial court denied Defendants' motion in an

> oral ruling from the bench at the conclusion of the hearing. A written order to that effect was entered April 10, 2023, *nunc pro tunc* to February 15, 2023, finding "that the [c]ourt has previously addressed and denied defendants' request upon hearing defendants' previously filed motion to reconsider. ... Defendants' motion to set aside is also denied."
>
> On March 8, 2023, after the hearing on the Motion to Set Aside, but before the written order denying it was entered, and 49 days after the entry of the January 18, 2023 order denying Defendants' Motion to Reconsider, Defendants filed a notice of appeal with this Court "appeal[ing] summary judgment against them as [a] matter of right, pursuant to oral denial Feb. 6, 2023, of accuseds' 'Motion to set aside[.]'" As noted above, an amended notice of appeal was filed with this Court on April 10, 2023. The amended notice of appeal was signed only by Tulis and made no reference to or mention of Cupelli. Instead, the amended notice of appeal provides notice that "accused appeals summary judgment and execution against him as matter of right, pursuant to oral denial Feb. 6, 2023, of accuseds' 'Motion to set aside[.]'"

*Flexibility Cap., Inc. v. Cupelli*, No. E202300335COAR3CV, 2023 WL 9104735, at *1–3 (Tenn. Ct. App. Nov. 14, 2023), *appeal denied* (Apr. 11, 2024). The Tennessee Court of Appeals ultimately dismissed Tulis's appeal as untimely and remanded the case to the Circuit Court for Hamilton County, Tennessee. *Id*. In this action, Tulis continues to maintain that the terms of his agreement with Flexibility Capital are fraudulent and violate state usury laws. (*Id*.)

Tulis also appears to allege that on October 31, 2019, he entered into another agreement with Funding Metrics, which he argues constitutes a loan, and that his radio station received "$11,660.08 as the 'net purchase price'" deposited into its checking account on November 5, 2019. (Doc. 13.) Tulis alleges that the terms of this loan were also fraudulent and violate state usury laws. (*Id*.) Specifically, Tulis alleges:

> Radio received $12,255 as the "net purchase price" of repayment, with repayments beginning Nov. 5, 2019. Ten percent interest on that amount is $1,225. Under a 10 percent APR loan, radio would owe $13,480. Hot News Talk Radio paid $17,428 on the loan, or $3,498 over the amount of $12,255 received for business operations.

(*Id*. at 19.)[1]  Under the terms of the contract, Funding Metrics purchased a 10.45% interest in the radio station's future accounts receivables until it received $28,400 in exchange for a purchase price of $12,255.08.  (Doc. 38-1, at 2.)  Tulis personally guaranteed his radio station's contract.  (*See id.* at 13.)

### III. FUNDING METRICS AND FLEXIBILITY CAPITAL'S MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Funding Metrics and Flexibility Capital have moved to dismiss Tulis's claims against them for failure to state a claim upon which relief can be granted.  (Docs. 60, 68.)

#### A. Standard of Law

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6).  On a Rule 12(b)(6) motion, the Court considers not whether the

---

[1] Although Tulis did not attach the contract documents to his complaint or amended complaint, TBF attached the contract between Tulis's radio station and Funding Metrics to its previously-filed motion to dismiss.  The Court can consider the contract between Funding Metrics and Tulis's radio station attached to TBF's motion to dismiss without converting it into a motion for summary judgment because these documents are referred to in Tulis's amended complaint.  *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (providing that courts may consider "exhibits attached [to pleadings], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment").

plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Analysis

#### i. *Flexibility Capital*

Flexibility Capital has moved to dismiss Tulis's claims against it for failure to state a claim upon which relief can be granted. (Doc. 60.) Specifically, Flexibility Capital argues that Tulis's state-law claims for usury and fraud are barred by the doctrine of res judicata and the *Rooker-Feldman* doctrine. (Doc. 61, at 4–6.)

The doctrine of res judicata encompasses "issue preclusion" and "claim preclusion." "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has

9
Case 1:24-cv-00240-TRM-MJD    Document 76    Filed 06/17/25    Page 9 of 15    PageID #: 517

been litigated and decided," whereas "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 (1984) (citations omitted)). "[I]f an action is dismissed on the merits, it operates as an absolute bar to any subsequent action between the same parties [or their privies] with respect to every matter that was actually litigated in the first case as well as every other ground of recovery that might have been presented . . . ." *Walker v. Gen. Tel. Co.*, 25 F. App'x. 332, 336 (6th Cir. 2001) (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994)). A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy*, 283 F.3d 761, 771–72 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

In this case, Tulis's claims against Flexibility Capital are barred by the doctrine of res judicata. The Circuit Court for Hamilton County, Tennessee, entered a final judgment on the merits as it relates to Flexibility Capital's efforts to recover under its contract with Tulis, and the Tennessee Court of Appeals dismissed Tulis's appeal as untimely. As a result, there is a final decision on the merits between the parties in this action. Additionally, Tulis raised the usury and fraud issues in the state-court action, and the Circuit Court rejected his arguments. Accordingly, this action is comprised of issues that were litigated or should have been litigated in the prior

state-court action, and his claims against Flexibility Capital are barred by the doctrine of res judicata.

Tulis's claims against Flexibility Capital are also barred by the *Rooker-Feldman* doctrine. Pursuant to 28 U.S.C. § 1257(a), "[f]inal judgments . . . rendered by the highest court of a State . . . may be reviewed by the Supreme Court by writ of certiorari . . . ." "The *Rooker–Feldman* doctrine is based on the negative inference that, if appellate court review of such state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). As summarized by the Supreme Court, the *Rooker-Feldman* doctrine operates to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. The pertinent inquiry in determining whether *Rooker-Feldman* operates to deprive a district court of subject matter jurisdiction "is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *Lawrence*, 531 F.3d at 368. "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

In this case, the *Rooker-Feldman* doctrine also bars Tulis's claims against Flexibility Capital because it is clear that the source of his alleged injuries is the underlying state-court judgment and its rejection of his usury and fraud claims. Indeed, Tulis's amended complaint requests that the Court find "that the Flexibility Capital Inc. v. Cupelli case in Tennessee courts was void from inception, and Hamilton County circuit court's judgment and later order of

execution was void as a matter of law for usury." (Doc. 13, at 29.) Such requested relief demonstrates that, after losing in state court, Tulis initiated this action complaining of injuries caused by the state-court judgment and inviting this Court to review and reject that judgment. As a result, the *Rooker-Feldman* doctrine prevents this Court from asserting jurisdiction over Tulis's claims against Flexibility Capital. Accordingly, because Tulis's claims against Flexibility Capital are barred by the doctrine of res judicta and by the *Rooker-Feldman* doctrine, the Court will grant Flexibility Capital's motion to dismiss for failure to state a claim upon which relief can be granted.

### ii. Funding Metrics

Funding Metrics has filed a motion to adopt the arguments set forth in Flexibility Capital's motion to dismiss, asserting that the Court should dismiss Tulis's claims against it because Flexibility Capital's arguments regarding application of the doctrine of res judicata and the *Rooker-Feldman* doctrine are equally applicable to Funding Metrics. (*See* Doc. 68.) Funding Metrics, however, has not identified any prior state-court action involving itself and Tulis. As a result, Funding Metrics has not demonstrated that the doctrine of res judicata or the *Rooker-Feldman* doctrine operate to bar Tulis's claims against it. Accordingly, the Court will deny Funding Metric's motion to dismiss based on those arguments.

## IV. FORUM NON CONVENIENS

Although not raised by the parties, it is likely that the Court should dismiss without prejudice Tulis's claims against Funding Metrics based on the doctrine of forum non conveniens. The doctrine of forum non conveniens is "essentially, a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453

(1994)). "[A] district court does not abuse its discretion simply by sua sponte raising forum non conveniens" because "[t]he doctrine falls within the court's inherent authority," and, "[s]o long as the district court has the facts relevant to the issue of forum non conveniens, it can raise the doctrine on its own accord." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Typically, a court may dismiss based on forum non conveniens after engaging in the following analysis. First, "the court determines the degree of deference owed to the plaintiff's forum choice." *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018). The burden then shifts to the defendant to show the existence of "an adequate alternative forum" and that "the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Id*. at 618–19; *see also Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006).

Nonetheless, forum-selection clauses should be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 60 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). When there is a valid forum-selection clause, "only [] extraordinary circumstances unrelated to the convenience of the parties" preclude dismissal based on forum non conveniens. *Id*. The presence of a valid forum-selection clause alters the traditional analysis in three ways. First, the plaintiff's choice of forum receives "no weight." *Id*. at 63. Second, the court should not "consider arguments about the parties' interests." *Id*. at 64. Third, when a party files in a forum other than the one designated by the forum-selection clause, the transferor court's choice of law rules do not follow the case upon transfer. *Id*.

In diversity actions, "the enforceability of [a] a forum selection clause is governed by federal law." *Wong*, 589 F.3d at 828. Under federal law, "a forum selection clause should be

13
Case 1:24-cv-00240-TRM-MJD    Document 76    Filed 06/17/25    Page 13 of 15
PageID #: 521

upheld absent a strong showing that it should be set aside." *Id*. In determining the enforceability of a forum selection clause, the court should consider "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id*.

As the Court referenced in its prior memorandum and order (Doc. 46), the contract between Funding Metrics and Tulis's radio station, which Tulis personally guaranteed, contains a forum-selection clause:

> 8. GOVERNING LAW, VENUE.
> ALL TRANSACTION DOCUMENTS INCLUDING, WITHOUT LIMITATION, THE APPLICATION, THIS AGREEMENT AND THE PAYMENT AUTHORIZATION SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT REGARD TO THE CONFLICT OF LAWS AND PRINCIPLES THEREOF. MERCHANT AND GUARANTOR CONSENT TO THE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN ANY COUNTY IN THE COMMONWEALTH OF PENNSYLVANIA AND AGREE THAT SUCH COURTS SHALL BE THE EXCLUSIVE FORUM FOR ALL ACTIONS, PROCEEDINGS OR LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR SUBJECT MATTER THEREOF;

(Doc. 38-1, at 12.) Tulis has not proffered any evidence suggesting that the forum-selection clause was obtained by fraud, duress, or other unconscionable means. He also has not proffered any evidence or argument suggesting that Pennsylvania courts would ineffectively or unfairly handle the suit or that litigating his claims against Funding Metrics in Pennsylvania would be so seriously inconvenient as to be unjust. As a result, the forum-selection clause is enforceable.

Because the contract that forms the basis for Tulis's claims contains an enforceable forum-selection clause, dismissal of Tulis's claims against Flexibility Capital without prejudice on the basis for forum non conveniens is likely appropriate. To the extent any party disagrees, it may file a brief not to exceed ten pages on or before **June 25, 2025**, setting forth the facts and legal authority to support any argument that dismissal for forum non conveniens is inappropriate.

## V. TULIS'S MOTIONS

In addition to the foregoing, Tulis has filed several motions, including: (1) an amended motion for return of seized property (Doc. 49); (2) an amended motion for summary judgment (Doc. 50); (3) an amended motion to void execution of judgment (Doc. 51); (4) an amended motion for order of estoppel (Doc. 53); and (5) a motion for sanctions (Doc. 64). Because the Court has found that Tulis's claims against Flexibility Capital are barred by the doctrine of res judicata and the *Rooker-Feldman* doctrine, and because the Court finds that dismissal of his claims against Funding Metrics under the doctrine of forum non conveniens is likely appropriate, Tulis's motions are **DENIED**.

## VI. CONCLUSION

For the reasons stated herein, Tulis's motions (Docs. 49, 50, 51, 53, 64) are **DENIED,** Flexibility Capital's motions to dismiss (Doc. 60) is **GRANTED** and Tulis's claims against it are hereby **DISMISSED WITH PREJUDICE**. Funding Metrics's motion to dismiss (Doc. 68) is **DENIED**. Flexibility Capital and Funding Metrics's previously filed motions to dismiss for insufficient service of process (Docs. 54, 55) are also **DENIED**. To the extent Funding Metrics or Tulis contends that dismissal for forum non conveniens is not appropriate, they are **ORDERED** to file a brief not to exceed ten pages on or before **June 25, 2025**, setting forth the facts and legal authority supporting their argument that dismissal for forum non conveniens is inappropriate.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**